# In the United States Court of Appeals for the District of Columbia Circuit

No. 25-1091

---

AFFIRMED ENERGY, LLC,
*Petitioner,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent.*

---

ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

---

**RESPONSE OF RESPONDENT
FEDERAL ENERGY REGULATORY COMMISSION
TO PETITION FOR REHEARING EN BANC**

---

DAVID L. MORENOFF
  DEPUTY GENERAL COUNSEL

ROBERT H. SOLOMON
  SOLICITOR

JARED B. FISH
  SENIOR ATTORNEY

FOR RESPONDENT
FEDERAL ENERGY REGULATORY
  COMMISSION
WASHINGTON, D.C. 20426

APRIL 21, 2026

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION.......................................................................................................1

ARGUMENT........................................................................................................... 6

I.      The panel majority's decision is correct and unremarkable................... 6

        A.      The Federal Power Act authorizes new tariff rules that apply
                to future transactions ........................................................................ 6

        B.      The panel majority correctly held that PJM's tariff amendment
                applied prospectively......................................................................... 9

        C.      Affirmed's claim to a "vested right" does not alter the
                prospective nature of PJM's tariff amendment............................12

II.     The panel majority's decision coheres with the precedents of the
        Supreme Court and this Court ...................................................................15

III.    Affirmed's theory of retroactivity undermines FERC's duty to ensure
        "just and reasonable" rates ........................................................................19

CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

**COURT CASES:**                                                         **PAGE(S)**

*Affirmed Energy, LLC v. FERC,*
166 F.4th 1070 (D.C. Cir. 2026)............................................. 2–12, 15–17, 19

*Arkema, Inc. v. EPA,*
618 F.3d 1 (D.C. Cir. 2010) ...........................................................9, 16–17

*Ass'n of Accredited Cosmetology Schs. v. Alexander,*
979 F.2d 859 (D.C. Cir. 1992)...................................................... 10

*Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA,*
72 F.4th 284 (D.C. Cir. 2023).................................................. 5, 9, 16

*Bergerco Can. v. U.S. Treasury Dep't,*
129 F.3d 189 (D.C. Cir. 1997) ................................................. 9, 16

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988) .................................................................. 9

*Chew Heong v. United States,*
112 U.S. 536 (1884)............................................................17–18

*City of Piqua v. FERC,*
610 F.2d 950 (D.C. Cir. 1979)...................................................... 8

*DIRECTV, Inc. v. FCC,*
110 F.3d 816 (D.C. Cir. 1997)................................................. 9, 16

*FERC v. Elec. Power Supply Ass'n,*
577 U.S. 260 (2016).................................................................. 2

*Hecate Energy LLC v. FERC,*
126 F.4th 660 (D.C. Cir. 2025).............................................1, 11, 20

*Hughes v. Talen Energy Mktg., LLC,*
578 U.S. 150 (2016) .................................................................. 3

# TABLE OF AUTHORITIES

**COURT CASES:** **PAGE(S)**

*Landgraf v. USI Film Prods.,*
511 U.S. 244 (1994).................................................. 5–7, 14–15, 17–18

*Lomax v. Ortiz-Marquez,*
140 S. Ct. 1721 (2020) ....................................................................12

*Md. Off. of People's Counsel v. FERC,*
164 F.4th 920 (D.C. Cir. 2026) ..................................................... 7–9

*Mobile Relay Assocs. v. FCC,*
457 F.3d 1 (D.C. Cir. 2006)...................................... 5–6, 9–11, 16, 19

*Nat'l Cable & Telecomms. Ass'n v. FCC,*
567 F.3d 659 (D.C. Cir. 2009)...........................................9–10, 16

*Okla. Gas & Elec. Co. v. FERC,*
11 F.4th 821 (D.C. Cir. 2021)...........................................................1, 7–8

*Old Dominion Elec. Coop. v. FERC,*
892 F.3d 1223 (D.C. Cir. 2018) ..................................................... 8

*Republic of Austria v. Altmann,*
541 U.S. 677 (2004) ......................................................................14

*Town of Concord v. FERC,*
955 F.2d 67 (D.C. Cir. 1992) ..........................................................7

**ADMINISTRATIVE CASES:**

*Am. Efficient, LLC,* "Order Assessing Civil Penalties,"
195 FERC ¶61,043 (2026) ............................................................. 4

*PJM Interconnection, L.L.C.,*
189 FERC ¶61,105 (2024)............................................................. 4

# TABLE OF AUTHORITIES

**STATUTE:** PAGE(S)

FEDERAL POWER ACT

Section 205, 16 U.S.C. §824d.................................................................... 2

Section 205(a), 16 U.S.C. §824d(a)................................................... 1, 7, 13

Section 205(b), 16 U.S.C. §824d(b) .........................................................1

Section 205(c), 16 U.S.C. §824d(c) ..................................... 7–9, 11–13, 18

Section 205(d), 16 U.S.C. §824d(d) .............................. 1, 4, 7–9, 11–13, 18

Section 206(a), 16 U.S.C. §824e(a)..........................................................7

**OTHER AUTHORITY:**

Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 HARV. L. REV. 692 (1960)...........................13

# In the United States Court of Appeals for the District of Columbia Circuit

No. 25-1091

―――――

AFFIRMED ENERGY, LLC,
*Petitioner,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent.*

―――――

ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

―――――

**RESPONSE OF RESPONDENT
FEDERAL ENERGY REGULATORY COMMISSION
TO PETITION FOR REHEARING EN BANC**

―――――

## INTRODUCTION

The Federal Power Act authorizes new tariff rates (and related tariff rules) to take effect "'after sixty days' notice'" to the Federal Energy Regulatory Commission—i.e., new rates take effect "prospectively." *Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821, 829 (D.C. Cir. 2021) (quoting 16 U.S.C. §824d(d)). And the Commission *must* accept a utility's new rate if it is "just and reasonable," *Hecate Energy LLC v. FERC*, 126 F.4th 660, 662 (D.C. Cir. 2025) (citing §824d(a), (b)), meaning the rate promotes electric grid reliability at a reasonable cost to consumers, *FERC v. Elec. Power Supply*

*Ass'n*, 577 U.S. 260, 290 (2016).  The panel majority in *Affirmed Energy, LLC v. FERC*, 166 F.4th 1070 (D.C. Cir. 2026), correctly held that FERC satisfied these statutory requirements in the matter on review.  Its opinion adheres to the Supreme Court's precedents and this Court's own, while preserving the integrity of FERC's congressional mandate to protect consumers from unreasonably high electric rates.  No basis exists to grant en banc rehearing; Affirmed Energy, LLC's petition should be denied.

At issue is a FERC-approved proposal by PJM Interconnection, L.L.C. (the electric grid operator for the mid-Atlantic region), filed under Federal Power Act Section 205, 16 U.S.C. §824d, to amend its governing tariff. *Affirmed*, 166 F.4th at 1077.  Specifically, PJM proposed modifying the eligibility rules for its capacity auctions.  *Id.*  The capacity auctions are annual events in which PJM purchases electric generation capacity to meet projected electric demand approximately three years in the future.  *Id.* at 1075.  Entities that clear the auction—i.e., those that place offers to supply capacity at or below the clearing price—receive the clearing price in exchange for their commitment to furnish electricity to the grid.  *Id.*

Auction participants are typically *bona fide* suppliers of electric capacity—i.e., electric generators.  *See Hughes v. Talen Energy Mktg., LLC*,

578 U.S. 150, 155 (2016). But for many years PJM also allowed energy savings from energy efficient products (e.g., efficient light bulbs and appliances) to be offered into the auction as generation "supply." *Affirmed*, 166 F.4th at 1075–1076 (explaining that allowing energy efficiency resources into the auction, beginning in 2009, addressed a capacity market anomaly, but that the anomaly was resolved in 2016). Inviting energy efficiency resources into the auction hatched a new business opportunity for enterprising firms. A company might aggregate *others*' energy savings derived from *others*' purchases and installations of energy efficient products, offer those savings as "supply" resources into the capacity auction, and reap tremendous profits when those offers cleared. FERC Br. 10–12.

Affirmed was constituted to take advantage of this opportunity. Affirmed purchased lists of energy efficient products that big-box retailers like Home Depot had already sold to consumers, estimated the energy savings from consumers' use of those products, and offered those savings into the capacity auctions. *Affirmed*, 166 F.4th at 1078; FERC Br. 10–11.

When the energy efficiency resources cleared, Affirmed collected hundreds

of millions of dollars—paid for by ratepayers.[1]  FERC Br. 11–12.

Concluding that a different approach would better serve ratepayers,

PJM filed with FERC the tariff amendment at issue in this case.  *Affirmed*,

166 F.4th at 1076–1077.  Consistent with the Federal Power Act's temporal

limitation, the amendment—which took effect 61 days after PJM filed it with

FERC, JA191—ended energy efficiency resources' eligibility to participate in

*future* PJM capacity auctions, beginning with the then-forthcoming

July 2025 auction (i.e., the auction for the 2026/2027 delivery year).[2]

*Affirmed*, 166 F.4th at 1077.  That is, the amendment "t[ook] effect" "after

sixty days' notice to the Commission."  16 U.S.C. §824d(d).

The Commission reasonably found the amendment "just and

reasonable" under the Federal Power Act because it cut consumers' costs

going forward without compromising grid reliability—a finding undisputed

---

[1]    On April 15, 2026, FERC issued an enforcement order—its largest ever at over $1.1 *billion*—against Affirmed and its affiliates for violating tariffs, including PJM's, and manipulating capacity auctions in conducting its energy efficiency program.  *Am. Efficient, LLC*, "Order Assessing Civil Penalties," 195 FERC ¶61,043.

[2]    The 2026/2027 delivery-year auction operated on a compressed schedule, rather than the typical three-year-advance schedule.  *PJM Interconnection, L.L.C.*, 189 FERC ¶61,105, P 2 (2024).

by both Affirmed and the entire panel in this case. *Affirmed*, 166 F.4th at 1078, 1085–1086, 1089; *id.* at 1090 (Pan, J., dissenting in part). Yet despite the amendment's prospective application, Affirmed insists it was impermissibly retroactive. Affirmed seizes on pre-amendment Tariff Section L.4, which allowed it to offer the same energy efficiency resources into three future capacity auctions if those resources cleared an initial auction. Pet. 8. Because the tariff amendment voided Affirmed's ability to exercise this prerogative for resources that previously cleared initial auctions, Affirmed argues the tariff change was unlawful. *Id.*

This Court properly rejected Affirmed's novel theory of retroactive ratemaking. As the panel majority correctly explained, it is well established—dating back decades—that "an order 'is not retroactive' if it 'alters the future effect' but 'not the past legal consequences of an action.'" *Affirmed*, 166 F.4th at 1082 (quoting *Mobile Relay Assocs. v. FCC*, 457 F.3d 1, 11 (D.C. Cir. 2006)). This rule derives from the Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *See, e.g., Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 292–293 (D.C. Cir. 2023). Here, the tariff amendment altered no past legal consequences of Affirmed's past actions: Affirmed retained its eligibility to participate in, and all the

revenue it received from, pre-amendment capacity auctions. *Affirmed*, 166 F.4th at 1082.

The Court's decision is unremarkable; it faithfully applies Supreme Court and D.C. Circuit retroactivity caselaw. *Affirmed*'s theory of retroactive ratemaking, by contrast, would set the Court on a path sharply at odds with both binding precedent and the Federal Power Act itself—"'hamstring[ing]'" FERC's ability to approve "just and reasonable" rates and protect consumers. *See id.* (quoting *Mobile Relay*, 457 F.3d at 11).

## ARGUMENT

**I.  The panel majority's decision is correct and unremarkable**

**A.  The Federal Power Act authorizes new tariff rules that apply to future transactions**

An inquiry into an agency action's conformity with the governing statute begins, as always, with the statute's text. *Landgraf*, 511 U.S. at 273, 280. If "Congress has expressly prescribed the statute's proper reach," then the lawfulness of an agency's action turns on the action's consistency with that prescription. *Id.* at 280. Situated in the context of federal electric energy law, so long as "a filed [electric] rate is changed in a manner provided by the Federal Power Act, the earlier rate is no longer" effective and the new

rate applies.  *Md. Off. of People's Counsel v. FERC*, 164 F.4th 920, 927 (D.C. Cir. 2026) (cleaned up).

1.  Unlike in *Landgraf*, where the implicated statute lacked "guiding instructions from Congress" on the statute's temporal reach, 511 U.S. at 280, the Federal Power Act includes express temporal parameters.  A utility-filed "just and reasonable" rate will "take effect" "after sixty days' notice to the Commission," at which point it becomes the filed rate that governs "any [FERC-jurisdictional] transmission or sale," 16 U.S.C. §824d(a), (c)–(d)— i.e., new rates are effective "prospectively," *Okla. Gas*, 11 F.4th at 829 (citing §824d(c)–(d)) (observing that a utility's "filed rate" includes related tariff rules); *see also Town of Concord v. FERC*, 955 F.2d 67, 71–72 & n.4 (D.C. Cir. 1992) (explaining that, where FERC rather than a utility sets a new rate, such rate similarly "'shall … be thereafter observed and in force'"—i.e., it is effective "prospectively" (quoting §824e(a)).  These requirements define the filed-rate doctrine in FERC matters.  *Affirmed*, 166 F.4th at 1080; *Okla. Gas*, 11 F.4th at 829.

2.  The flip-side of the Federal Power Act's forward-looking directive is a prohibition on enacting new rates that apply to, and thereby undo, past transactions.  This "rule against retroactive ratemaking prohibits a utility

from 'setting rates to recoup past losses'" incident to past transactions, "and [prohibits] FERC from 'prescribing rates on that principle.'" *Affirmed*, 166 F.4th at 1080 (quoting *City of Piqua v. FERC*, 610 F.2d 950, 954 (D.C. Cir. 1979)) (cleaned up). FERC was thus correct to reject a grid operator's request for a waiver of its tariff rules, which would have allowed the operator to adjust a *past* bill for a *past* transaction beyond the tariff's one-year grace period—a period that had already expired. *Okla. Gas*, 11 F.4th at 826, 830; *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1231–1232 (D.C. Cir. 2018) (similar); FERC Br. 47.

*Oklahoma Gas* and *Old Dominion* hew to the Federal Power Act's plain text. The requested waivers would have been *retroactively* imposed, not effectuated in *future* "transmission[s] or sale[s]," §824d(c)–(d), because the waivers would have subjected past transactions to different rates than the rates on file when the transactions occurred, *see People's Counsel*, 164 F.4th at 927 ("[T]he [filed-rate] doctrine does not operate independently of the 'interconnected statutory' provisions that undergird it." (quoting *Okla. Gas*, 11 F.4th at 829)). Thus, the definition of retroactive ratemaking in FERC cases maps onto the generic definition of retroactivity long applied to all manner of agency actions: "[R]etroactive rules alter the past legal

consequences of past actions." *E.g.*, *Weld Cnty.*, 72 F.4th at 292–293

(quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 219 (1988) (Scalia,

J., concurring)); *accord Affirmed*, 166 F.4th at 1082; *Arkema Inc. v. EPA*, 618

F.3d 1, 7 (D.C. Cir. 2010); *Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d

659, 670 (D.C. Cir. 2009); *Mobile Relay*, 457 F.3d at 11; *Bergerco Can. v. U.S.*

*Treasury Dep't*, 129 F.3d 189, 192–193 (D.C. Cir. 1997); *see also DIRECTV,*

*Inc. v. FCC*, 110 F.3d 816, 826 (D.C. Cir. 1997); FERC Br. 46–49.

**B.     The panel majority correctly held that PJM's tariff amendment applied prospectively**

1. FERC's acceptance of PJM's tariff amendment in *Affirmed* was

lawful because the change occurred "in a manner provided by the Federal

Power Act." *People's Counsel*, 164 F.4th at 927 (cleaned up).  The

amendment "t[ook] effect" "after sixty days' notice to the Commission" and

governed "any transmission or sale" thereafter.  16 U.S.C. §824d(c)–(d).

Specifically, the amendment applied to future, post-amendment capacity

auctions, beginning with the July 2025-held, 2026/2027 delivery-year

auction.  *Affirmed*, 166 F.4th at 1080, 1082 (holding that FERC's orders were

"forward-looking" and "prospective" (cleaned up)); FERC Br. 49–51.

Put another way, FERC's orders accepting the tariff amendment did

not alter the past legal consequences of Affirmed's past participation in

PJM's pre-amendment auctions. "They did not strip Affirmed of its 'past eligibility'" for those auctions, "force Affirmed to return the 'payments [it] had received' from earlier auctions," *Affirmed*, 166 F.4th at 1082 (quoting *Ass'n of Accredited Cosmetology Schs. v. Alexander*, 979 F.2d 859, 864 (D.C. Cir. 1992)), or "render Affirmed's 'past actions illegal or otherwise sanctionable,'" *id.* (quoting *Nat'l Cable*, 567 F.3d at 670); FERC Br. 50. In short, FERC's orders did not undo a past transaction governed by the pre-amendment tariff and thus did not violate the rule against retroactive ratemaking.

2. Affirmed is, of course, correct that the tariff amendment altered the "future effect" of its past auction participation by disqualifying its energy efficiency resources from post-amendment auctions. *Affirmed*, 166 F.4th at 1082 (quoting *Mobile Relay*, 457 F.3d at 11). Under the *status quo ante*, Tariff Section L.4 allowed Affirmed to offer the same resources into three subsequent auctions if it first cleared those resources in an initial auction.[3] *Id.* at 1076, 1078. Affirmed's resources cleared the 2023/2024 and

---

[3] Section L.4 provided: "An Energy Efficiency Resource that clears an auction for a Delivery Year may be offered in auctions for up to three additional consecutive Delivery Years, but shall not be assured of clearing in any such auction ...." *Affirmed*, 166 F.4th at 1076 (quoting JA61).

2024/2025 delivery-year auctions and so, under the pre-amended tariff, it had some expectation that it could offer those same resources into the post-amendment 2026/2027 and 2027/2028 delivery-year auctions. *Id.* at 1080, 1082; FERC Br. 62–64.

Affirmed's expectation was relevant to deciding if FERC adequately assessed Affirmed's reliance interests in approving the tariff amendment. *Affirmed*, 166 F.4th at 1081 n.2, 1087–1089; FERC Br. 61–67. But Affirmed does not challenge the panel's correct (and unanimous) finding that FERC satisfied that obligation. *See Affirmed*, 166 F.4th at 1081 n.2, 1087–1089; *id.* at 1090 (Pan, J., dissenting in part). Instead, Affirmed insists the filed-rate doctrine categorically barred FERC from eliminating its future ability to offer into post-amendment auctions. Pet. 8. The panel majority properly rejected that claim. *Affirmed*, 166 F.4th at 1082. After all, "an order 'is not retroactive' if it 'alters the future effect' but 'not the past legal consequences of an action.'" *Id.* (quoting *Mobile Relay*, 457 F.3d at 11).

The Federal Power Act itself compels this conclusion. The statute *requires* FERC to accept a new tariff rule that is "just and reasonable," *Hecate*, 126 F.4th at 662, which rule shall apply to "any transmission or sale" thereafter, §824d(c)–(d). And nothing in the statute conditions FERC's

11

acceptance of a "just and reasonable" rule on that rule *also* preserving "permission[s]"—here, to offer into four consecutive auctions—created under prior rules. *Cf. Affirmed*, 166 F.4th at 1080, 1083 ("The critical question is whether FERC violated the [Federal Power Act's] rule permitting only prospective changes to the filed rate."). Nor may such a condition be read into the statute: A court may not "narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020).

Neither Affirmed nor the panel in this case disputed that the tariff amendment was, in fact, "just and reasonable." *Affirmed*, 166 F.4th at 1085–1086, 1089; *id.* at 1090 (Pan, J., dissenting in part). Accordingly, FERC properly approved the amendment because it governed post-amendment "transmission[s] or sale[s]," *see* §824d(c)-(d)—i.e., future capacity auctions, beginning with the July 2025 auction. *See Affirmed*, 166 F.4th at 1082.

### C. Affirmed's claim to a "vested right" does not alter the prospective nature of PJM's tariff amendment

Ignoring the relevance of both the filed-rate doctrine and the Federal Power Act's text, Affirmed anchors its retroactivity claim in the notion that the tariff amendment vitiated its "vested right" to offer into three capacity auctions after clearing once. Pet. 1–4, 7–14. Notably, Affirmed nowhere

defines "vested right," a conspicuous omission given the term's centrality to Affirmed's retroactivity claim.  But that definitional gap is unsurprising in one regard: Labeling a right "vested" does not *ipso facto* mean its elimination is impermissibly retroactive.

Three points show why.  *First*, "it has long been recognized that the term 'vested right' is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute."  Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 696 (1960).  Here, as discussed, the Federal Power Act provides that a new "just and reasonable" tariff rule is applied to "any" future electric "transmission or sale," §824d(a), (c)–(d)—without regard to whether the rule affects, *in futuro*, permissions accorded under prior rules.  Thus, Affirmed's averred auction-participation right was reasonably not a "vested" right.

*Second*, even if such a right *had* "vested," the Supreme Court has explained that "[t]he critical issue" in deciding impermissible retroactive effect "is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates."

*Republic of Austria v. Altmann*, 541 U.S. 677, 698 n.17 (2004) (quoting

*Landgraf*, 511 U.S. at 291 (Scalia, J., concurring)).

*Third*, *Landgraf* demonstrates that Affirmed's averred right—however

it is labeled—does not, in any event, trigger retroactivity concerns because it

was, at most, a *contingent* right at the times Affirmed acted.  Under

*Landgraf*, impermissible retroactivity might occur if a new law "would

impair rights a party *possessed when he acted*."  511 U.S. at 280 (emphasis

added).  If an aggrieved party's past action instead triggered a right that was

contingent on other events first occurring, then the party did not "possess"

such right at the time "he acted," and the detrimental reliance concern

animating anti-retroactivity principles is vastly diminished.  *See id*. at 270,

275 (backwards-looking laws do not "rais[e] concerns about retroactivity"

where they involve "diminished reliance interests").

At all times that Affirmed "acted," it had, at most, a contingent right to

offer into three capacity auctions after clearing once.  FERC Br. 58–60 & n.8.

Affirmed first "acted" by paying $50 million for sales data on the energy

efficiency resources implicated here.  *Id*. at 57–58.  Affirmed "acted" again by

offering those resources into initial capacity auctions (the 2023/2024 and

2024/2025 delivery-year auctions).  *Id*. at 59 & n.8.  At both junctures,

Affirmed "possessed" only the "right[]" to offer into those initial auctions, and the tariff amendment did not "impair" that right. *See Landgraf*, 511 U.S. at 280; *Affirmed*, 166 F.4th at 1076, 1082. Only if PJM later cleared Affirmed's resources in the initial auctions would Affirmed then, under Tariff Section L.4, have the privilege of offering those same resources into three subsequent auctions—the privilege the tariff amendment eliminated. *Affirmed*, 166 F.4th at 1078. Put another way, at all times that Affirmed "acted," it "possessed" no right to offer into three subsequent auctions; it had only a contingent right to do so. Accordingly, even if the Federal Power Act-derived rule against retroactive ratemaking did not authorize the tariff amendment (it does), its enactment would not constitute impermissible retroactivity under *Landgraf*'s general principles.

## II. The panel majority's decision coheres with the precedents of the Supreme Court and this Court

Affirmed contends that the panel majority's opinion implicates "[e]xceptionally [i]mportant" issues. Pet. 11. But its attempt to transform a discrete decision concerning the filed-rate doctrine into a harbinger of "disruptive effects" ricocheting across "the full range of constitutional, statutory, and regulatory subjects" withers upon inspection. *See id.* at 4, 12. Affirmed espies an intra-circuit split where none exists, mistakes factual

15

distinctions with Supreme Court caselaw for legal inconsistencies and, most fundamentally, overlooks that the filed-rate doctrine, as defined by the Federal Power Act, contextualizes the retroactivity inquiry in the matter on review. *See Affirmed*, 166 F.4th at 1083 ("The critical question is whether FERC violated the [Federal Power Act's] rule permitting only prospective changes to the filed rate.").

1. Affirmed mistakenly criticizes the panel majority's opinion as imposing a "significant, new limitation ... on the definition of retroactivity." Pet. 12. Actually, the Court was faithful to decades of retroactivity precedent (*see Affirmed*, 166 F.4th at 1081–1083 (collecting cases)), in which this Court has consistently defined retroactive actions in agency cases as those that "alter the past legal consequences of past actions." *E.g.*, *Weld Cnty.*, 72 F.4th at 292–293 (cleaned up); *Arkema*, 618 F.3d at 7; *Nat'l Cable*, 567 F.3d at 670; *Mobile Relay*, 457 F.3d at 11; *Bergerco*, 129 F.3d at 192–193; *see also* *DIRECTV*, 110 F.3d at 826. And the Court has long recognized that this definition aligns with the Supreme Court's decision in *Landgraf*. *E.g.*, *Weld Cnty.*, 72 F.4th at 292–293; *Bergerco*, 129 F.3d at 193.

Affirmed attempts to spawn intra-circuit discord by pitting the Court's opinion here against its decision in *Arkema*. Pet. 15. But no inconsistency

16

exists.  *See Arkema*, 618 F.3d at 7 (asking whether a rule "alter[ed] the *past legal consequences of past actions*" (cleaned up)).  *Arkema* involved EPA's attempt, by way of enacting a new rule, to nullify past transactions that were lawful under a prior rule.  *Id*. at 7–9.  Specifically, the new rule reversed the petitioner's past transfer of pollution allowances to other entities.  *Id*.  By attempting to "undo these completed transactions" the new rule was, this Court held, impermissibly retroactive.  *Id*. at 9–10.

Here, by contrast, no "completed transactions" were "undo[ne]." *Affirmed*, 166 F.4th at 1082 & n.4 (recognizing precisely this distinction with *Arkema* and affirming the established rule, articulated in *Landgraf*, that "[l]aws that nullify past transactions are quintessentially retroactive" (citing *Landgraf*, 511 U.S. at 268–269)).  As the panel majority correctly explained, the tariff amendment did not disturb Affirmed's completed transactions— i.e., its lawful participation in, and receipt of revenue from, pre-amendment capacity auctions.  *Id*.

2.  Affirmed fares no better relying on *Chew Heong v. United States*, 112 U.S. 536 (1884).  Pet. 10–11.  That case involved new legislation that canceled Chinese laborers' prior right—secured by international treaty—to reenter the United States without first obtaining a certificate to do so at the

time they exited the United States. 112 U.S. at 543, 554–556, 559–560. The Supreme Court held that the new statute could not be retrospectively applied to a Chinese laborer who left the country *before* the statute's enactment (and thus did not first obtain a reentry certificate), and sought reentry *after* its enactment. *Id.* at 559–560. That conclusion flowed from the "plain, natural, and obvious meaning" of the statute, informed by the United States' treaty obligations, which "utterly forb[ade] the conclusion that there was any intention to impair or destroy rights previously granted." *Id.*

Here, by contrast, the Federal Power Act provides that new tariff rules "take effect" "after sixty days' notice to the Commission," and shall govern "any" future "transmission or sale." 16 U.S.C. §824d(c)–(d). PJM's tariff amendment complied with these directives. *Supra* pp.9, 11–12.

Further, in *Chew Heong*, the laborer's right to reentry without a certificate was perfected upon his exit from the country. 112 U.S. at 560. Thus, the laborer "possessed" an unencumbered "right" to return to the United States when he "acted" by leaving the country—predicate facts that can support a retroactivity claim under *Landgraf*. *See* 511 U.S. at 280. As

discussed, Affirmed's expectation of offering into three additional auctions was, at most, a contingent right. *Supra* pp.14–15.

### III. Affirmed's theory of retroactivity undermines FERC's duty to ensure "just and reasonable" rates

The Court's decision in *Affirmed* confirmed the Commission's longstanding and well-established authority under the Federal Power Act. Affirmed's novel interpretation of retroactivity, by contrast, would "'hamstring' FERC in exercising its statutory prerogative to accept just and reasonable tariffs." *Affirmed*, 166 F.4th at 1082 (quoting *Mobile Relay*, 457 F.3d at 11); FERC Br. 51–53.

One need not look far beyond the facts of this case to grasp the perils of Affirmed's approach. Say Tariff Section L.4 provided that an energy efficiency resource that cleared an initial auction "may be offered in auctions for future Delivery Years," as opposed to stating, as Section L.4 did, that such resource "may be offered in auctions for [only] up to three additional consecutive Delivery Years." *See* JA61. Under Affirmed's theory of retroactive ratemaking, that resource would secure an inviolable right, immediately upon clearing an initial auction, to offer into not just three more auctions, but into future auctions *ad infinitum*. FERC Br. 51–52. That is contrary to the plain text of the Federal Power Act, which *requires* FERC

19

to approve new "just and reasonable" rules, *Hecate*, 126 F.4th at 662—here, by accepting PJM's proposal to amend its tariff to better protect ratepayers.

## CONCLUSION

The panel majority's decision in *Affirmed* is correct and unremarkable. It is consistent with the plain text of the Federal Power Act, consistent with the rulings of the Supreme Court, and consistent with this Court's decades-long line of retroactivity cases. The petition for rehearing en banc should be denied.

Respectfully submitted,

David L. Morenoff
Deputy General Counsel

Robert H. Solomon
Solicitor

*/s/ Jared B. Fish*
Jared B. Fish
Senior Attorney


Federal Energy Regulatory Commission
Washington, D.C. 20426
Tel: (202) 502-8101
jared.fish@ferc.gov

APRIL 21, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Circuit Rule 32(e), I certify that this brief complies with the type-volume limitation in Fed. R. App. P. 40(d)(3)–(4), Circuit Rule 40(d), and this Court's April 6, 2026 Order (Doc. 2167216), because this brief contains 3,900 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Miller Text 14-point font using Microsoft Word 365.

/s/ Jared B. Fish
Jared B. Fish
Senior Attorney

Federal Energy Regulatory Commission
Washington, DC 20426
Tel.: (202) 502-8101
E-mail: Jared.Fish@ferc.gov

April 21, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system April 21, 2026. Participants in the case will be served by the appellate CM/ECF system.

*/s/ Jared B. Fish*
Jared B. Fish
Senior Attorney